## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

ERIBERTO FLORES,

        Plaintiff,

        v.

FRANK SMITH, in his official capacity as
Chief of Police and individually; MARK
BECKER, in his official and individual
capacity; GERARDO GARZA, JR., in his
official and individual capacity; and FRANK
ALIMON, in his official and individual
capacity,

        Defendants.

CAUSE NO.: 2:17-CV-215-TLS

## OPINION AND ORDER

This matter is before the Court on the Defendants' Motion for Summary Judgment [ECF
No. 26] and the Defendants' Motion to Strike [ECF No. 34]. For the reasons set forth below, the
Court grants the motion to strike, grants the motion for summary judgment as to the federal
claims, and declines to exercise supplemental jurisdiction over the state law claims.

## PROCEDURAL BACKGROUND

Alleging violations of his rights in relation to his arrest and detention on May 10, 2015,
the Plaintiff Eriberto Flores filed the instant Complaint [ECF No. 1] on May 9, 2017, against
Defendant Frank Smith individually and in his official capacity as Chief of Police as well as
Defendants Mark Becker, Gerardo Garza, Jr., and Francisco Aleman III,[1] each in his individual
and official capacities.[2]

---

[1] Defendant Frank Alimon's correct name is Francisco Aleman III. *See* ECF No. 11.
[2] At the time of the events underlying the Complaint, Mark Becker was the Chief of Police and Frank
Smith was a Lieutenant. *See* Compl. ¶¶ 5–8. Because the official capacity claims naming Chief Becker

The Plaintiff brings the following federal claims pursuant to 42 U.S.C. § 1983: (1) First Amendment Retaliation against all Defendants based on the Plaintiff's prior participation with and campaigning for the Concerned Citizens of East Chicago (Count I); (2) Fourth, Fifth, and Fourteenth Amendment false arrest and excessive force against (a) Officer Garza when the Plaintiff was arrested without probable cause, taken into custody, and detained and when Officer Garza grabbed, twisted, exerted excessive pressure, and otherwise manhandled the Plaintiff's arms and shoulders, causing him injury, (b) Officer Aleman, Officer Garza, and then-Chief Becker for failing to prevent the deprivations of his rights, and (c) the Chief of Police under a theory of *Monell* liability (Count II); (3) Fourteenth Amendment unlawful detention against (a) Officer Garza for detention without probable cause, (b) Lieutenant Smith for refusing to accept the bond money presented by the Plaintiff's mother, and (c) the Chief of Police under a theory of *Monell* liability (Count III); and (4) Fourteenth Amendment failure to train against the Chief of Police under a theory of *Monell* Liability in relation to Officer Garza's conduct during the Plaintiff's arrest (Count IV). In Counts V–VII, the Plaintiff alleges Indiana state law claims of battery, intentional infliction of emotional distress, and negligence.

The Defendants filed Answers [ECF Nos. 8–11]. Following discovery, the Defendants filed the instant Motion for Summary Judgment [ECF No. 26]. The Plaintiff filed a response [ECF No. 31], and the Defendants filed a reply [ECF No. 33]. The Defendants also filed a Motion to Strike [ECF No. 34], to which the Plaintiff did not respond.

## SUMMARY JUDGMENT STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

---

are now against Chief Smith, the Court refers to the official capacity claims as brought against the "Chief of Police" for clarity.

Civ. P. 56(a). The movant may discharge this burden by "either: (1) showing that there is an absence of evidence supporting an essential element of the non-moving party's claim; or (2) presenting affirmative evidence that negates an essential element of the non-moving party's claim." *Hummel v. St. Joseph Cnty. Bd. of Comm'rs*, 817 F.3d 1010, 1016 (7th Cir. 2016) (citation omitted). In response, the non-movant "must make a sufficient showing on every element of his case on which he bears the burden of proof; if he fails to do so, there is no issue for trial." *Yeatts v. Zimmer Biomet Holdings, Inc.*, 940 F.3d 354, 358 (7th Cir. 2019) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

In ruling on a motion for summary judgment, a court must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Id.* (citation omitted). A court's role "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994) (citations omitted). Facts that are outcome determinative under the applicable law are material for summary judgment purposes. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**MOTION TO STRIKE**

In support of his opposition to summary judgment, the Plaintiff submitted a four-page, handwritten, unsigned, and undated letter allegedly from Curtis Hill. *See* Pl. Ex. 4, Dep. Ex. 5, ECF No. 32-5. The Plaintiff's response brief relies on Hill's out-of-court statements for the truth of the matters asserted therein. The Defendants move to strike the letter as inadmissible hearsay. On summary judgment, materials must be admissible as evidence at trial, "although the form produced at summary judgment need not be admissible." *Igasaki v. Ill. Dep't of Fin. and Prof'l*

*Regulation*, 988 F.3d 948, 955 (7th Cir. 2021) (citation omitted). A court cannot "consider inadmissible hearsay, over proper objections, in deciding summary judgment." *Lewandowski v. City of Milwaukee*, 823 F. App'x 426, 428–29 (7th Cir. 2020); *see Eaton v. J. H. Findorff & Son, Inc.*, 1 F.4th 508, 512 n.3 (7th Cir. 2021). The Defendants offer evidence that they twice scheduled the deposition of Hill during discovery but that he failed to appear both times. The Plaintiff offers no response to the Defendants' hearsay objection. The Court hereby SUSTAINS the objection and GRANTS the Defendants' Motion to Strike.

## MATERIAL FACTS

### A.    The Plaintiff's Community Activism

Plaintiff Eriberto Flores became a community activist in 2005 and a member of the Concerned Citizens of East Chicago in 2007 or 2008. Pl. Ex. 12, 358:15–20, 359:12–23, ECF No. 32-13. As a result of his involvement with the group, an ordinance was passed in 2010 that addressed parking on the street where the Plaintiff lives. *Id*. at 359:24–360:18. Prior to the passage of the ordinance, the Plaintiff had never been arrested in the City of East Chicago. *Id*. at 360:2–5. The Plaintiff complained to the City on numerous occasions about the ordinance not being enforced. *Id*. at 361:7–25.

### B.    The Plaintiff's Prior 2013 Arrest and Resulting 2015 Federal Lawsuit

On January 16, 2015, the Plaintiff filed a lawsuit against the City of East Chicago, Mark Becker as chief of police, and three police officers. *See Flores v. City of East Chicago, et al.*, No. 2:15-cv-22-PPS. The Plaintiff alleged that, on January 16, 2013, he contacted the dispatcher for the City to report ordinance violations occurring outside his residence. *See* Am. Compl. ¶ 15, ECF No. 15, *Flores*, No. 2:15-cv-22. As he was leaving his home, he saw two police officers drive past his house; he approached the officers and inquired on the status of his complaint. *Id*. at

¶¶ 18, 21. The Plaintiff was arrested and later charged with disorderly conduct and resisting law enforcement. *Id.* at ¶ 30. The state criminal charges were dismissed on July 17, 2014. Pl. Ex. 3, ECF No. 32-4. The Plaintiff brought § 1983 claims based on First Amendment retaliation; Fourth Amendment false arrest, excessive force, and unlawful detention and confinement; and failure to train. Am. Compl. 6–11, *Flores*, No. 2:15-cv-22. The Plaintiff alleged that the arresting officer injured his left shoulder and arm during the arrest. *Id.* at ¶ 42(f). On January 3, 2017, the Court granted partial summary judgment. Op. & Order, ECF No. 47, *Flores*, No. 2:15-cv-22. The lawsuit settled on February 1, 2017. ECF No. 50, *Flores*, No. 2:15-cv-22.

**C.      The Plaintiff's 2015 Arrest and the Instant 2017 Lawsuit**

Defendant Officer Gerardo Garza, Jr. applied to the East Chicago Police Department in late 2013 and was hired in June 2014. Pl. Ex. 4, 8:1–9:6, ECF No. 32-5. After completing training, he began working as a probationary police officer in April 2015. *Id*. at 11:1–12.

On May 10, 2015, Officer Garza observed a vehicle disregard a stop sign. Pl. Ex. 4, 16:3–14. The driver of the vehicle was Curtis Hill, who did not have a valid driver's license. *Id*. at 17:8–18. At approximately 4:10 a.m., the Plaintiff was awoken by a phone call from Hill, who told the Plaintiff that he had been pulled over by the police and needed someone to drive his car. Def. Ex. 1, 82:23–83:6, ECF No. 28-1. Hill explained that he only had a learner's permit, but that the officer would allow him to have someone with a driver's license drive his vehicle. *Id.* at 83:7–10. During the call, the Plaintiff did not hear an officer state that it would be okay for the Plaintiff to drive Hill's vehicle. *Id.* at 91:2–5. Officer Garza testified that he never told Hill that he would allow another person to drive his vehicle. Def. Ex. 2, 12:9–11, ECF No. 28-2. The Plaintiff quickly dressed and headed toward Hill's location, which took approximately two minutes. Def. Ex. 1, 84:4–13; Pl. Ex. 5, 90:3–7, ECF No. 32-6. While talking on the phone to

Hill, the Plaintiff heard Hill tell the officer that he was talking to "Bert Flores." Pl. Ex. 5, 100:6–23. It was still dark outside. Def. Ex. 1, 88:2.

Upon arriving at the scene, the Plaintiff drove around the officers and their two vehicles and parked his vehicle. *Id.* at 96:17–20. He jumped out of his vehicle, leaving the engine running and the door open. *Id.* at 98:5–12. He hurried toward Officer Garza and announced, "I'm here." *Id.* at 98:17–20, 112:3–21. The Plaintiff did not identify himself. *Id.* at 108:21–109:15, 112:20–21. Officer Garza did not know who the Plaintiff was when he arrived at the scene. Def. Ex. 2, 37:11–18. Officer Garza asked, "Who the fuck are you?" and the Plaintiff responded, "Are you kidding?" Def. Ex 1, 115:9–12. Officer Garza told the Plaintiff, "Get the fuck out of here or I'm going to lock you up." *Id.* at 115:16–17. The Plaintiff moved closer to Officer Garza. *Id.* at 121:25–122:2. Officer Garza started walking away from the Plaintiff, but the Plaintiff followed him while yelling that he was going to drive Hill's car, coming within inches of Officer Garza. *Id.* at 122:14–20; Def. Ex. 2, 14:11–21, 17:22–24. Officer Garza told the Plaintiff to return to his vehicle, but the Plaintiff did not stop. Def. Ex 2, 14:22–25. Instead, the Plaintiff put his hand on the door handle of Hill's vehicle. *Id.* at 16:8–11. At some point, the Plaintiff asked Defendant Officer Frank Aleman, III, who was also at the scene, whether he was going to let a rookie officer like Officer Garza talk to the Plaintiff that way. Pl. Ex. 5, 117:4–12. Officer Garza then grabbed the Plaintiff, slammed him against the car, handcuffed him, and placed him under arrest for interfering with the traffic stop. *Id.* at 117:10–21, 127:1–24; Def. Ex. 1, 129:6–20; Def. Ex. 2, 16:12–16.

While being handcuffed, the Plaintiff tensed his muscles and pulled away. Def. Ex. 2, 17:1–9, 19:2–4. Officer Garza did not take the Plaintiff to the ground. *Id.* at 47:4–9. In the process of Officer Garza grabbing the Plaintiff's arms, the Plaintiff's bracelet got caught in the

handcuffs and was ripped off. Pl. Ex. 5, 127:13–16, 128:2–13. The Plaintiff did not advise

Officer Garza that he sustained an injury at the time of the arrest and did not request any medical

attention at the time of the arrest. Def. Ex. 2, at 46:6–11, 20–22. Officer Garza charged the

Plaintiff with interfering with a traffic stop and resisting law enforcement. *Id.* at 16:15–17:2.

Once he arrived at the jail, the Plaintiff told Officer Manuel that he was diabetic and on

medication. Pl. Ex. 6, 165:16–19, ECF No. 32-7. The Plaintiff also told Officer Manuel that he

wanted to go to the hospital "just in general," but not because of his diabetes. Def. Ex. 1, 170:3–

9. Officer Manuel responded that he would have to wait until the 7:00 a.m. shift. Pl. Ex. 6,

165:20–22. The Plaintiff did not tell Officer Manuel that he needed any medical attention due to

the arrest by Officer Garza or that he needed to go to the hospital because of an injury. Def. Ex.

3, 15:8–11, 20:17–19, ECF No. 28-3. The Plaintiff advised Officer Manuel that he felt fine but

would need his medication at some point. *Id.* at 11:4–9. The Plaintiff called his mother, Elvira

Flores, and told her that he needed his medicine. Pl. Ex. 7, 11:2–23, ECF No. 32-8.

Pursuant to City of East Chicago policy, if a detainee needs medicine, medical personnel

are contacted to administer the medication. Def. Ex. 3, 13:14–20; Def. Ex. 4, 14:4–25, ECF No.

28-4; Def. Ex. 5, ECF No. 28-5; Pl. Ex. 9, 21:2–5, 39:10–13, ECF No. 32-10. Officer Manuel

told the Plaintiff that he could have his medication brought to the jail, and the Plaintiff saw

Officer Manuel type something after he told the Plaintiff, "Let me get ahold of Agosto and see if

he could bring you your stuff." Pl. Ex. 6, 173:11–18, 179:9–23; Pl. Ex. 10, 10:1–7, 11:4–12, ECF

No. 32-11. Officer Manuel worked the 11:00 p.m. to 7:00 a.m. shift, and Officer Torres worked

the 7:00 a.m. to 3:00 p.m. shift. Pl. Ex. 6, 193:17–22. The Plaintiff testified that Officer Torres

denied the Plaintiff his medication and his request to go to the hospital on May 10, 2015, at

lunchtime. *Id.* at 189:15–23. That morning, Officer Agosto went to the home of the Plaintiff's

mother to get the Plaintiff's diabetes medication; however, before Mrs. Flores left for the jail at 8:30, Officer Agosto returned with the medication because the jail would not let him give it to the Plaintiff. Pl. Ex. 7, 60:10–21, 13–25. While in jail, the Plaintiff did not speak with anyone else about his diabetes medication or the need for medical attention. Def. Ex. 1, 193:7–9, 196:4–7. The Plaintiff was released from jail on May 11, 2015, at approximately 1:00 p.m. *Id.* at 195:6–8. The Plaintiff did not receive his diabetes medication until he was released from jail. Pl. Ex. 6, 187:1–11. The charges against the Plaintiff were dismissed on January 20, 2017. Pl. Ex. 2, ECF No. 32-3.

The Plaintiff testified that the arrest aggravated a previous injury to his left shoulder. Def. Ex. 1, 48:22–49:3. The Plaintiff did not go to the emergency room after he was released from jail. *Id.* at 224:18–25. Before the May 10, 2015 arrest, the Plaintiff already planned to seek treatment from an orthopedic surgeon for his left shoulder. *Id.* at 312:13–17. None of the Plaintiff's medical doctors opined that the Plaintiff reinjured his left shoulder or injured his left wrist as a result of this arrest. *Id.* at 280:15–22, 321:6–10, 326:18–327:15, 396:7–11.

**D.     The Plaintiff's Bond**

Officer Manuel told the Plaintiff that his bond was $1000, which the Plaintiff told his mother. Pl. Ex. 6, 166:3–6. Ms. Flores went to the jail sometime after 8:30 a.m. to "get [the Plaintiff] out to be able to pay the fine – the bail." Pl. Ex. 7, 19:8–24, 26:9–11. Before going to the jail, Mrs. Flores did not speak with anyone from the City of East Chicago regarding the Plaintiff's bail. Def. Ex. 7, 13:20–14:2, ECF No. 28-7. When Mrs. Flores arrived at the jail, nobody was in the office; after waiting hours to speak with someone, she eventually tried to communicate with two officers who were behind the glass. Pl. Ex. 7, 26:19–20, 27:3–19, 35:13–22. She does not know the names of the officers. *Id.* at 28:5–9. After she gave them the

Plaintiff's name, she was told, "Tomorrow." *Id.* at 29:11–18. Although she asked them, the officers never told Mrs. Flores the amount of the bail. *Id.* at 31:22–25, 33:8–11. Mrs. Flores did not try to give the officers at the police department any money for the Plaintiff's bail. Def. Ex. 7, 30:16–23. When asked at her deposition if anyone at the City misled her or prevented her from bailing out the Plaintiff, she responded, "No." *Id.* at 30:1–4; *see also id.* at 42:24–43:2.

Officer Torres testified that the Plaintiff's offenses of resisting law enforcement were "'bond out' right there," which was in place on May 10, 2015. Pl. Ex. 8, 21:8–12, ECF No. 32-9. An individual who wants to post a bond with the City of East Chicago Police Department must contact the detention center. Def. Ex. 6, 8:3–12, ECF No. 28-6. A bond schedule was posted in the detention area on May 10, 2015. Pl. Ex. 9, 9:2–5. Lieutenant Smith was the lieutenant of the Uniform Division and did not handle bonds; someone working the desk received the bonds. *Id.* at 5:12–15, 7:23–8:7. Lieutenant Smith's duties were to "oversee the jail, if they needed anything, such as paperwork or if someone needed to be treated or anything, they would contact [him]." *Id.* at 13:4–14. Lieutenant Smith has no recollection of a discussion with Mrs. Flores, the Plaintiff, or anyone else regarding the Plaintiff's bond. Def. Ex. 6, 10:20–24; Pl. Ex. 9, 11:14–21.

## E.      The Other Defendants' Involvement in the Plaintiff's May 10, 2015 Arrest

At the scene of the May 10, 2015 arrest, Officer Aleman did not say anything to the Plaintiff, was courteous and polite, and did not touch the Plaintiff. Def. Ex. 1, 113:13, 114:17–115:4, 355:6–8. Neither Chief Becker nor Lieutenant Smith was present at or had any personal involvement in the arrest. *Id.* at 13:2–14:2, 115:6–8, 344:2–4.

## F.      The Defendants' Knowledge of the Plaintiff's Involvement with the Concerned Citizens of East Chicago and the Plaintiff's Prior Lawsuit

During the May 10, 2015 arrest, no officer mentioned the Plaintiff's affiliation with the Concerned Citizens of East Chicago. Def. Ex. 1, 385:7–15. The Plaintiff does not know whether

Officer Garza knew he was in a community activist group or took any action against him during the arrest due to the passage of the parking ordinance. *Id.* at 383:2–9, 384:11–13, 386:1–6. Officer Garza had never seen or heard of the Plaintiff before the May 10, 2015 arrest. Def. Ex. 2, 37:19–22. Lieutenant Smith did not know anything about the Concerned Citizens of East Chicago. Def. Ex. 6, 36:4–10. Lieutenant Smith testified that he believed the Plaintiff had "called about parking by his home" but did not recall whether he had any conversations with the Plaintiff on the issue. Pl. Ex. 9, 19:4–10.

**G.**      **City of East Chicago Police Officer Training**

All City of East Chicago police officers received training from the police academy. Def. Ex. 6, 25:12–15. Officer Garza and Officer Torres received law enforcement training from the police academy as well as field officer training with the City's police department. Def. Ex. 2, 8:16–22; Pl. Ex. 4, 9:10–21; Def. Ex. 4, 4:9–16. Chief Becker, Lieutenant Smith, and Officer Manuel received police academy training as well. Def. Ex. 3, 5:11–17; Def. Ex. 6, 25:12–25. The officers participate in twenty-four hours of mandated training annually. *Id.* at 12:3–6.

### ANALYSIS

The Defendants seek summary judgment on all the Plaintiff's claims.

**A.**      **Federal Claims—42 U.S.C. § 1983**

Section 1983 provides, in pertinent part, that "[e]very person who, under color of [state law], subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law." 42 U.S.C. § 1983. To prevail on a § 1983 claim, a plaintiff must show that the defendant deprived him of a federal constitutional right and that the defendant acted under color of state law. *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006).

The official capacity claims against the Chief of Police are "to be treated as a suit against the entity" in all but name. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *see also Sow v. Fortville Police Dep't*, 636 F.3d 293, 300 (7th Cir. 2011). A municipality like the City of East Chicago can only be held liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). This requires a plaintiff to prove that "the unconstitutional act complained of is caused by: (1) an official policy adopted and promulgated by [the city's] officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010) (citing *Monell*, 436 U.S. at 690).

1.     *Claims Against Defendants Becker and Smith in Their Individual Capacities*

Defendants then-Chief Becker and then-Lieutenant Smith seek summary judgment on the § 1983 claims against them in their individual capacities. Individual liability under § 1983 requires that the individual be personally involved in the alleged constitutional deprivation. *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) (citing *Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010)). For a supervisor to be personally liable, the "supervisor must 'know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see.'" *Kemp v. Fulton County*, 27 F.4th 491, 498 (7th Cir. 2022) (quoting *Matthews v. City of East St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012)). Here, the Plaintiff has not designated any evidence to show the personal involvement of either Chief Becker or Lieutenant Smith in the events underlying the Plaintiff's alleged federal constitutional claims.

As for Chief Becker, the Plaintiff offers evidence only that he was the chief of police at the time of the Plaintiff's May 10, 2015 arrest and detention. However, Chief Becker was not present at or involved with the Plaintiff's arrest. The Plaintiff has offered no evidence that Chief Becker was involved with the issues related to the Plaintiff's detention or that any of the relevant events during the Plaintiff's arrest or detention took place at Chief Becker's direction. Similarly, Lieutenant Smith was not present at or involved with the Plaintiff's arrest. Although Lieutenant Smith was in a supervisory role at the jail, which included supervising those who worked the desk where bond is posted, Lieutenant Smith did not handle bonds himself. There is no evidence that Lieutenant Smith had any involvement with the Plaintiff's bond, either directly or by directing his subordinates. Accordingly, the Court grants summary judgment in favor of Defendants Becker and Smith on the § 1983 claims against them in their individual capacities.

2.    *First Amendment Retaliation*

In Count I, the Plaintiff alleges that the Defendants' actions on May 10 and 11, 2015, were motivated by the Plaintiff's involvement with the Concerned Citizens of East Chicago in violation of his First Amendment Rights. To prevail on a First Amendment retaliation claim, a plaintiff "must demonstrate that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Novoselsky v. Brown*, 822 F.3d 342, 354 (7th Cir. 2016) (citations omitted). The plaintiff must demonstrate that the defendant "knew of the plaintiff's constitutional activities." *Stagman v. Ryan*, 176 F.3d 986, 999 (7th Cir. 1999).

The evidence of record shows that the Plaintiff became a community activist in 2005 and a member of the Concerned Citizens of East Chicago in 2007 or 2008. The Plaintiff was

successful in getting an ordinance passed in 2010 that dealt with parking on the street where he

lives. After the ordinance was passed, the Plaintiff called the city several times to complain that

the ordinance was not being enforced. Chief Becker was aware of the Plaintiff's involvement

with the group through the Plaintiff's prior 2015 lawsuit, and Lieutenant Smith was aware of the

Plaintiff's phone calls. However, summary judgment has been granted in favor of both for lack

of personal involvement in the Plaintiff's arrest and detention underlying this case.

The Plaintiff contends that "[i]t is a reasonable inference from the facts presented that the

Plaintiff was well known by all of the defendants in spite of their self-serving denial." Pl. Resp.

14, ECF No. 32. The Court disagrees; the Plaintiff has designated no evidence that Officers

Garza and Aleman, the named Defendants involved in his May 10, 2015 arrest and detention,

knew of his political activity or phone calls. Officer Garza had never seen or heard of the

Plaintiff before that date. The Plaintiff also argues the suspicious timing of the events that led to

his May 10, 2015 arrest, including the subsequent dismissal of the charges. He notes that, prior to

the passage of the parking ordinance in 2010, he had never been arrested and that he called the

City several times after the ordinance was passed to complain about its enforcement. But, again,

the Plaintiff has offered no evidence of any personal involvement of Chief Becker or Lieutenant

Smith—the Defendants who were aware of this past activity—in the events underlying the

instant lawsuit. Accordingly, the Court grants the motion for summary judgment on Count I in

favor of all the Defendants.

3.      *False Arrest and Unlawful Detention—Probable Cause*

In Count II, the Plaintiff brings a § 1983 false arrest claim against Officer Garza for

arresting him without probable cause. In Count III, the Plaintiff alleges that his detention was

unlawful as a result. To prevail on a Fourth Amendment false arrest claim, a plaintiff must

demonstrate "that he was arrested without probable cause." *Gaddis v. DeMattei*, 30 F.4th 625, 630 (7th Cir. 2022) (citing *Farnik v. City of Chicago*, 1 F.4th 535, 545 (7th Cir. 2021)). Probable cause is an absolute defense to a claim of false arrest as well wrongful detention. *Id.* (citing *Farnik*, 1 F.4th at 545); *Bailey v. City of Chicago*, 779 F.3d 689, 694 (7th Cir. 2015). Probable cause "exists at arrest when a reasonable officer with all the knowledge of the on-scene officers would have believed that the suspect committed an offense defined by state law." *Jump v. Village of Shorewood*, 42 F.4th 782, 789 (7th Cir. 2022) (citing *Jones v. Clark*, 630 F.3d 677, 684 (7th Cir. 2011)). This is a common-sense inquiry. *Young v. City of Chicago*, 987 F.3d 641, 644 (7th Cir. 2021) (citation omitted). Under Indiana law, "[a] person who knowingly or intentionally . . . forcibly resists, obstructs, or interferes with a law enforcement officer . . . while the officer is lawfully engaged in the execution of the officer's duties . . . commits resisting law enforcement, a Class A misdemeanor." Ind. Code § 35-44.1-3-1(a)(1).

The Court turns to what Officer Garza knew at the time of the Plaintiff's arrest for interfering with the traffic stop of Hill. The undisputed facts show that, while Officers Garza and Aleman were at the scene of the traffic stop, the Plaintiff arrived in his vehicle unannounced. He exited his vehicle, leaving the driver's door open and the vehicle running. Without identifying himself, he ran up to the scene and announced, "I'm here." Although the Plaintiff believed the officers would allow him to drive Hill's vehicle from the scene, Officer Garza did not advise Hill that he would allow someone to drive his vehicle. Indeed, the Plaintiff testified that he did not hear an officer give Hill any such permission during the call. Once the Plaintiff arrived, Officer Garza told the Plaintiff to leave and return to his vehicle. However, the Plaintiff followed Officer Garza, coming within inches of him. The Plaintiff disregarded the instruction to leave and instead put his hand on the handle of Hill's vehicle. This constitutes sufficient information from

which Officer Garza could have reasonably believed that probable cause existed to arrest the Plaintiff for interfering with the traffic stop under Indiana law. *See, e.g.*, *Miller v. Perry*, No. 1:18-cv-1101, 2021 WL 2532912, at *4 (S.D. Ind. June 21, 2021) (finding arguable probable cause (1) to arrest Miller for resisting law enforcement, Ind. Code § 35-44.1-3-1(a)(1), when the officer knew Miller was talking over him, berating him for allegedly rude manner, and otherwise trying to speak with him while he attempted to speak with Fisher while investigating the accident and (2) to arrest Fisher for resisting law enforcement under the statute when Fisher tried to grab Miller away from the officer while the officer was attempting to arrest Miller); *Clemons v. City of Hobart*, No. 2:17-cv-11, 2019 WL 1228205, at *3 (N.D. Ind. Mar. 13, 2019) (finding probable cause to arrest for resisting law enforcement where the plaintiff interfered in a meaningful way by imposing his arms between the officer and the person being arrested and blocking the officer's view at one point (comparing *Spangler v. State*, 607 N.E.2d 720, 723 (Ind. 1993), with *Guthrie v. State*, 720 N.E.2d 7, 9 (Ind. Ct. App. 1999), and *Johnson v. State*, 833 N.E.2d 516, 519 (Ind. Ct. App. 2005))).

The Plaintiff argues that his intention as he arrived at the scene was simply to help Hill drive his vehicle home and avoid the cost of having his car towed. However, the probable cause inquiry considers the knowledge of the officer at the time of the arrest. *See Jump*, 42 F.4th at 789. The Plaintiff's subjective belief and intentions, unknown to the officers, is irrelevant to the constitutional analysis. *See, e.g.*, *Bridgewater v. City of Indianapolis*, 1:14-cv-1370, 2016 WL 1117646, at *11 (S.D. Ind. Mar. 22, 2016) (finding that the plaintiffs' subjective belief as to whether the detectives were in fact law enforcement officers was irrelevant to the constitutional analysis of whether there was probable cause to arrest the plaintiffs for resisting law enforcement).

15

The Plaintiff also notes that the charges for interfering with a traffic stop and resisting arrest were eventually dropped. However, the fact that the charges were later dismissed does not control whether Officer Garza lacked probable cause to arrest the Plaintiff based on Officer Garza's knowledge at the scene on May 10, 2015. *See Humphrey v. Staszak*, 148 F.3d 719, 728 (7th Cir. 1998) ("The fact that the charges against Humphrey were later voluntarily dismissed does not mean there was no probable cause for his arrest."); *see also Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979) ("The validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest."). "A court evaluates probable cause not with the benefit of hindsight, and not on the facts as perceived by an omniscient observer, but on the facts as they appeared to a reasonable person in the defendant's position, even if that reasonable belief turned out to be incorrect." *Stokes v. Bd. of Educ.*, 599 F.3d 617, 622 (7th Cir. 2010). In his response brief, the Plaintiff cites only case law regarding a charge of resisting law enforcement and the well-established right to walk away, which is not at issue in this case. *See* Pl. Resp. 19 (citing *Gaddie v. State*, 10 N.E.3d 1249 (Ind. 2014); *Miller v. State*, 51 N.E.3d 313 (Ind. Ct. App. 2016)).

Because Officer Garza had probable cause to arrest the Plaintiff, the § 1983 false arrest, detention, and confinement claims in Counts II and III are barred, and the Court grants summary judgment in favor of Defendant Garza on these claims. As a result, the Plaintiff's related *Monell* claims in Counts II and III fail as well. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (recognizing that there can be no *Monell* liability in the absence of an underlying constitutional violation).

4.    *Excessive Force*

In Count II, the Plaintiff also brings a § 1983 excessive force claim against Officer Garza

for slamming him against Hill's car to effectuate the arrest and for ripping off his bracelet. The

Fourth Amendment's objective reasonableness standard governs claims of excessive force by a

police officer. *Graham v. Connor*, 490 U.S. 386, 388 (1989). "An officer's use of force is

unreasonable if, judging from the totality of the circumstances at the time of the arrest, the

officer uses greater force than was reasonably necessary to effectuate the arrest." *Gupta v.*

*Melloh*, 19 F.4th 990, 996 (7th Cir. 2021) (quoting *Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513,

519 (7th Cir. 2012)). The totality of the circumstances considers "the severity of the crime at

issue, whether the suspect poses an immediate threat to the safety of the officers or others, and

whether he is actively resisting arrest or attempting to evade arrest by flight." *Turner v. City of*

*Champaign*, 979 F.3d 563, 567 (7th Cir. 2020) (quoting *Graham*, 490 U.S. at 396). "An officer

who has the right to arrest an individual also has the right to use some degree of physical force or

threat of force to effectuate the arrest, . . . circumscribed by the Fourth Amendment's insistence

on reasonableness." *Stainback v. Dixon*, 569 F.3d 767, 772 (7th Cir. 2009) (citing *Graham*, 490

U.S. at 396). The reasonableness of an officer's use of force is a legal determination for the

court. *Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007); *Phillips*, 678 F.3d at 520.

"[P]olice officers are often forced to make split-second judgments—in circumstances that

are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a

particular situation." *Graham*, 490 U.S. at 397. Thus, courts must consider the facts "from the

perspective of the reasonable officer on the scene, rather than with the 20/20 vision of

hindsight." *Id.* at 396. Notably, "[n]ot every push or shove, even if it may later seem unnecessary

in the peace of a judge's chambers, violates the Fourth Amendment." *Id.* (internal quotation

marks and citation omitted)). Importantly, "the question is whether the officer's actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397.

Under the totality of the circumstances surrounding the traffic stop and the Plaintiff's undisputed conduct leading up to his arrest, the amount of force used by Officer Garza was objectively reasonable. In his response brief, the Plaintiff's claim of excessive force is based on Officer Garza slamming him against Hill's car to handcuff him and the fact that his bracelet was ripped off while being handcuffed. The Plaintiff cites the evidence that, after Officer Garza said, "Get the fuck out of here or I'm going to lock you up," the Plaintiff asked Officer Aleman, the other officer at the scene, if he was going to let a rookie like Officer Garza talk to the Plaintiff that way. Officer Garza then grabbed the Plaintiff and slammed him against Hill's car, handcuffing him and placing him under arrest.

However, the Plaintiff does not dispute the other facts that show the Plaintiff posed an immediate threat to the safety of the officers at the scene while interfering with the traffic stop. The Plaintiff arrived at the scene unannounced while it was still dark outside. The Plaintiff exited his vehicle, leaving the car running and the door open, and hurried toward the officers. The Plaintiff did not identify himself but instead announced, "I'm here." Officer Garza did not know who the Plaintiff was. Officer Garza instructed the Plaintiff to leave the scene or face arrest. As Officer Garza walked away from the Plaintiff, the Plaintiff walked toward Officer Garza, coming within inches of Officer Garza. The Plaintiff ignored the directive to leave and instead put his hand on the door handle of Hill's vehicle. The Plaintiff tensed his muscles and pulled away while being handcuffed.

Viewing all these facts objectively, a reasonable officer in Officer Garza's position could have determined that the Plaintiff, who was interfering with the traffic stop, posed an immediate threat to himself and Officer Aleman in that he was unknown to Officer Garza and was ignoring Officer Garza's commands. Officer Garza's modest use of force to "slam" the Plaintiff into the car in order to place him in handcuffs was objectively reasonable under the circumstances. *See, e.g.*, *Smith v. City of Chicago*, 242 F.3d 737, 743–44 (7th Cir. 2001) (finding that a reasonable officer would have thought the plaintiff was trying to flee and thus the officer did not use excessive force when he "pulled [the plaintiff] out of the car, pinned his arms behind his back, slammed him against the hood of his car, and handcuffed him"); *Cherry v. Washington County*, 526 F. App'x 683, 687 (7th Cir. 2013) (finding that the officer did not use excessive force by pushing the suspect to the ground and pressing his face against the road during the arrest when the suspect had disobeyed the officers' instructions to look straight ahead and not turn around).

The Plaintiff cites law that "police officers do not have the right to shove, push, or otherwise assault innocent citizens without any provocation whatsoever." *Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir. 1996). The undisputed facts do not depict the Plaintiff as an innocent citizen after he disregarded Officer Garza's command to leave the scene and instead followed Officer Garza, got within inches of Officer Garza, and then put his hand on Hill's car door. The Plaintiff also contends that he "did not commit a crime" and "did not resist his arrest." Pl. Resp. 21. As held in the previous section, Officer Garza had probable cause to believe that the Plaintiff was committing the crime of interfering with the traffic stop, and the Plaintiff does not dispute Officer Garza's testimony that he pulled away while being handcuffed. Finally, the Plaintiff's response brief describes Officer Garza as "ripping off [the Plaintiff's] bracelet" during the handcuffing. Pl. Resp. 15. However, the Plaintiff testified that the Plaintiff's bracelet got caught

in the handcuffs and was ripped off while Officer Garza grabbed his arms; this evidence does not suggest the use of an unnecessary amount of force.

For these reasons, the Court grants summary judgment in favor of Defendant Garza on the § 1983 excessive force claim in Count II.[3] Because there was no constitutional violation, the Plaintiff's related *Monell* claim in Count II fails as well. *See Heller*, 475 U.S. at 799.

5.      *Failure to Intervene–Officer Aleman*

In Count II, the Plaintiff alleges that Officer Aleman failed to prevent Officer Garza's use of excessive force and arrest of the Plaintiff. "It is clearly established that '[a]n officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know . . . excessive force was being used' and 'the officer had a realistic opportunity to intervene to prevent the harm from occurring.'" *Stewardson v. Biggs*, 43 F.4th 732, 736 (7th Cir. 2022) (quoting *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994)). As set forth in the previous two sections, Officer Garza had probable cause to arrest the Plaintiff and his use of force was objectively reasonable under the circumstances. Accordingly, because no violation of the Plaintiff's constitutional rights occurred, there can be no failure to intervene claim against Officer Aleman. *See Fillmore v. Page*, 358 F.3d 496, 506 (7th Cir. 2004) ("[T]here was no constitutionally impermissible failure to intervene because there was no violation that compelled intervention."). The Court grants summary judgment in favor of Defendant Aleman on Count II.

---

[3] The Defendants argue that the Plaintiff has offered no evidence of injury from the arrest. However, "[p]laintiffs need not show physical injury in order to sustain an excessive force claim," as "an arrest can be effectuated by the slightest application of physical force, or by some other show of authority." *Baird v. Renbarger*, 576 F.3d 340, 344 (7th Cir. 2009) (citing *California v. Hodari D.*, 499 U.S. 621, 625 (1991)). "The issue is simply whether . . . . [the] seizure meets Fourth Amendment standards." *Id.*

6. *Wrongful Pretrial Detention Based on Denial of Bond*

In Count III, the Plaintiff alleges that Lieutenant Smith violated his due process rights by refusing to accept bond money presented by Mrs. Flores on May 10, 2015. This claim is also brought against the Chief of Police in his official capacity under a theory of *Monell* liability. The Defendants moved for summary judgment on this claim, and the Plaintiff responded; however, the parties do not cite any law in relation to this claim. Although the Complaint invokes the due process protections of the Fourteenth Amendment, the claim is governed by the Fourth Amendment, which "establishes the 'standards and procedures' governing pretrial detention." *Manuel v. City of Joliet*, 137 S. Ct. 911, 914 (2017). In *Williams v. Dart*, a case in which the plaintiffs challenged the Cook County Sheriff's unilateral decision to keep them in custody despite the state court's bail orders and the posting of bail, the Seventh Circuit Court of Appeals held that the Fourth Amendment governed the claims of wrongful pretrial custody, rejecting an application of Fourteenth Amendment due process principles. 967 F.3d 625, 632–37 (7th Cir. 2020) (citing *Manuel*, 137 S. Ct. at 914, 917).

The Fourth Amendment requires a prompt "judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest." *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975). "[A] jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of *Gerstein*." *County of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991). Nevertheless, "an arrestee can still 'prove that his or her probable cause determination was delayed unreasonably' when, for example, the delays were 'for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake.'" *Mitchell v. Doherty*, 37 F.4th 1277, 1280 (7th Cir. 2022) (quoting *McLaughlin*, 500 U.S. at 56). In *Mitchell*,

21

the Seventh Circuit held that the Fourth Amendment does not require a bail hearing within forty-eight hours of a warrantless arrest, distinguishing between the judicial probable cause determination and the bail hearing. *Id.* at 1281–82, 1289 (finding that the bail hearings held within sixty-eight hours were constitutional under the Fourth Amendment, where the plaintiffs were arrested on a Friday and a Saturday and waited until Monday at 1:30 p.m. to receive a bail hearing—with the longest waiting sixty-eight hours—and a judge had made an ex parte probable cause determination within forty-eight hours).

Here, the Complaint alleges that Lieutenant Smith prevented Mrs. Flores from posting bond for the Plaintiff on Sunday, May 10, 2015. The Plaintiff was released around 1:00 p.m. on Monday, May 11, 2015, which was approximately 30 hours after his arrest. Thus, this case does not involve the disregard of a judicial bond order or the "prolonged detention" at issue in *Williams*, nor does this case involve the delay of a bond hearing beyond forty-eight hours after arrest at issue in *Mitchell*. It appears that the Plaintiff may be arguing, under *McLaughlin*, that the alleged refusal to accept his bond money was motivated by ill will. *See* Pl. Br. 21 ("The only reason for the treatment [by] the Defendants was due to who [the Plaintiff] was, not for what he had done on May 10, 2015.").

This claim fails because the Plaintiff has offered no evidence that he was denied the opportunity to post bond on May 10, 2015. Although Mrs. Flores testified that the officers behind the glass at the police station would not tell her the amount of the Defendant's bond, she also testified that she never attempted to provide any officer at the police department with money for the Plaintiff's bond. Importantly, she testified that no one at the police department prevented her from posting bond for the Plaintiff. Moreover, contrary to the Complaint's allegations, the Plaintiff has offered no evidence that Lieutenant Smith was personally involved with Mrs.

22

Flores' visit to the jail on May 10, 2015, or the Plaintiff's bond. Thus, the Plaintiff has not shown

a Fourth Amendment violation. Accordingly, the Court grants summary judgment in favor of

Defendant Smith on this claim in Count III as well as on the related *Monell* claim. *See Heller*,

475 U.S. at 799.

Finally, in this same section of his response brief, the Plaintiff alleges for the first time,

and with no citation to law, that he was denied access to his diabetes medication during his

detention. He did not bring this allegation in his Complaint. Under *Miranda v. County of Lake*, a

medical-care claim brought by a pretrial detainee is considered under the Fourteenth

Amendment's objective unreasonableness standard. 900 F.3d 335, 352 (7th Cir. 2018); *see also*

*Williams*, 967 F.3d at 637 ("Conditions of pretrial confinement, as opposed to the standards and

procedures required to impose it, are subject to the Due Process Clause's prohibition on

preconviction punishment."). A plaintiff must first "show that the defendant acted purposefully,

knowingly, or recklessly when considering the consequences of his response to the medical

condition." *James v. Hale*, 959 F.3d 307, 318 (7th Cir. 2020) (citation omitted). Second, a

"plaintiff must show that the challenged conduct was objectively unreasonable in light of the

totality of the relevant facts and circumstances." *Id*. Here, the Plaintiff testified that he told

Officer Manuel that he would need his diabetes medication "at some point" but did not tell

Officer Manual at booking that he needed to go to the hospital for his diabetes. Although the

Plaintiff testified that Officer Torres refused the Plaintiff's request for his diabetes medication at

lunchtime on May 10, 2015, the Plaintiff has not brought a claim against Officer Torres. The

Plaintiff did not ask any other officer for his medication prior to his release from jail on May 11,

2015, and he did not go to the emergency room after he was released. The Plaintiff has not

shown that any of the Defendants' conduct was objectively unreasonable in relation to his

diabetes medication, and the Court grants summary judgment in favor of the Defendants on this claim.

7.      Monell *Liability Based on a Failure to Train in Relation to Bond and Medication*

In Count IV, the Plaintiff brings a separate *Monell* claim based on a failure train in relation to the alleged excessive force used by Officer Garza during the arrest. In response to summary judgment, however, the Plaintiff argues a failure to train solely in relation to the payment of the Plaintiff's bond and his diabetes medication while he was detained.

A failure to train constitutes an official custom or policy under *Monell* "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). The Plaintiff has offered no evidence of "[a] pattern of similar constitutional violations by untrained employees [that] is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (citation omitted). In limited circumstances, a municipality's failure to train its officers based on a single incident can rise to the level of a government policy and impose *Monell* liability when the constitutional violation is a "highly predictable consequence" of the failure to train. *Id.* at 63–64 (quoting *Bd. of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (1997); citing *City of Canton*, 489 U.S. at 390 n.10); *see also Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 929 (7th Cir. 2004) (quoting *Bryan Cnty.*, 520 U.S. at 409). The Plaintiff has failed to satisfy this standard. As set forth above, the Plaintiff has not offered evidence of a constitutional violation related to the payment of his bond or his diabetes medication. Therefore, there can be no *Monell* liability based on a failure to train related to these issues. The Plaintiff's original failure to train claim based on the alleged excessive force by Officer Garza likewise fails because, as set forth above, Officer Garza did not

24

use excessive force. The Court grants summary judgment in favor of the Chief of Police in his official capacity on Count IV.

8.    *Qualified Immunity*

Finally, the Defendants argue that the individual officers are entitled to qualified immunity. "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 7 (2021) (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017)). Thus, the two questions are "whether the plaintiff has alleged a deprivation of a constitutional right at all, and whether the right at issue was clearly established at the time and under the circumstances presented." *Bianchi v. McQueen*, 818 F.3d 309, 319 (7th Cir. 2016) (citation omitted). Because the Plaintiff has failed to create a genuine dispute of material fact as to any of the alleged constitutional violations, the Court need not further address the issue of qualified immunity. *See Los Angeles County v. Rettele*, 550 U.S. 609, 616 (2007); *Tucker v. Williams*, 682 F.3d 654, 660 (7th Cir. 2012) ("Because we do not find a constitutional violation, we need not and do not address Williams' qualified immunity defense.").

**B.    State Law Claims**

In the Complaint, the Plaintiff invokes the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over the Plaintiff's state law claims. "When all federal claims have been dismissed prior to trial, the principle of comity encourages federal courts to relinquish supplemental jurisdiction pursuant to § 1367(c)(3)." *Hansen v. Bd. of Trs. of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 607 (7th Cir. 2008). While the decision to exercise supplemental jurisdiction is discretionary, "there is a general presumption that the court will relinquish supplemental jurisdiction." *Rivera v. Allstate Ins. Co.*, 913 F.3d 603, 618 (7th Cir. 2018) (citing

25

*RWJ Mgmt. Co., Inc. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 479–80 (7th Cir. 2012)). "The presumption is rebuttable, but it should not be lightly abandoned, as it is based on a legitimate and substantial concern with minimizing federal intrusion into areas of purely state law." *RWJ Mgmt. Co., Inc.*, 672 F.3d at 479 (quotation marks and citation omitted). As the Court has not engaged in any meaningful review of the merits of the state law claims and has not otherwise committed substantial judicial resources to them, declining to exercise jurisdiction is proper. *See Davis v. Cook County*, 534 F.3d 650, 654 (7th Cir. 2008) ("[T]he district court disposed of the federal claims on summary judgment, and so 'substantial judicial resources' have not yet been committed to the case.").

## CONCLUSION

For the reasons set forth above, the Court hereby GRANTS the Defendants' Motion to Strike [ECF No. 34] and GRANTS in part and DENIES in part the Defendants' Motion for Summary Judgment [ECF No. 26], granting summary judgment in favor of the Defendants on the Plaintiff's federal claims brought under 42 U.S.C. § 1983 in Counts I–IV. The Court DIRECTS the Clerk of Court to enter judgment against the Plaintiff Eriberto Flores and in favor of the Defendants Frank Smith, Mark Becker, Gerardo Garza, Jr., and Frank Alimon in their official and individual capacities on Counts I–IV of the Complaint.

The Court DECLINES to exercise supplemental jurisdictional over the Plaintiff's state law claims in Counts V–VII and DISMISSES without prejudice those claims.

SO ORDERED on September 14, 2022.

 s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT